53 CCPA

**Application of Sven Runo Vilhelm GEBELIUS.**

**Patent Appeal No. 7533.**

United States Court of Customs and Patent Appeals.

Jan. 6, 1966.

Eric Y. Munson, New York City, for appellant.

Clarence W. Moore, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection on prior art of claim 5, the only claim involved in appellant's application [1] for "Arrangement for Window Benches."

The claimed invention can best be understood by reading claim 5 in conjunction with appellant's Figure 4, reproduced here, which shows a vertical cross-section through the claimed window bench. The numerals in the claim correspond to the numerals in the drawing.

*Fig 4*

5. A combined, elongated window bench consisting of brackets [6] elevated above the floor and attached to a wall in proximity to a window, a box structure [2] supported on the brackets above the floor and including a bottom and front and rear vertical walls, a top panel [1] resting on the upper ends of the vertical walls and having positioning means [4, 4'] for engaging the walls to maintain said top panel in no-shifting relation in respect to the box, the box and top panel being wholly supported by the brackets and defining a space between them that is closed at the top and bottom and forms a passageway for electrical wiring, at least one end of the top panel projecting beyond one of the walls of the box and terminating in a downwardly-extending skirt [5] defining a space between it and the adjacent

1. Serial No. 66,052, filed October 31, 1960.

wall of the box for electric connection devices.

As a further aid in understanding the invention, the following excerpt from the Gebelius specification is set forth:

This invention relates to an arrangement for window benches which facilitates the concealment of electric cables leading to apparatuses which are placed on desks or similar working tables, said tables being intended to be placed close by windows.

In offices in particular it has up to now been a source of inconvenience to lead cables to all sorts of electrical apparatuses that are necessary for effective office work. Usually these cables have been entangled together in such a way that they give rise to considerable inconvenience as well as giving an impression of disorder.

The object of the arrangement according to the invention is to eliminate these generally known drawbacks.

The window benches are of a type that are fixed to brackets that can be permanently or detachably fitted to the walls in a space under the window benches, with the arrangement according to the invention being essentially characterized in that each window bench is furnished with a cable drum running along its length.

The arrangement is also characterized in that the cable drum is fixed on the underside of the window bench and also that the underside of the cable drum is arranged to be fixed to the brackets.

The arrangement is further characterized in that the window bench itself, which is detachable is fitted to the cable drum in such a way that the window bench forms a cover over the drum.

The references are:

Barecki 2,907,378 October 6, 1959
Olsen (Norwegian) 90,936 February 10, 1958

Barecki discloses a "seat [for vehicles such as buses] of the 'longitudinal' type, i. e., the type * * * which is installed with its back against a side wall of the vehicle as distinguished from the 'transverse' type" and which is "especially adapted for installation on a base enclosure which may house certain operating equipment and controls * * *, and which is so constructed that the seat may be lifted at its front edge to give access to the interior of the base enclosure * * *." The base enclosure comprises a front wall and end walls with seat portion or cover overlaid thereon which is secured in place by means forming a pivotal connection and forward latch members received in spring clips. Figure 1, illustrative of Barecki's invention, is depicted here:

Fig. 1

Olsen discloses a window sill board which can best be described by reference to his Figure 1, shown here, in conjunction with the description of that figure which reads as follows:

The window sill board * * * is made in the form of an elongate, longitudinally profiled, formed pressed plate 1. * * * The profiling is such that the plate has downwardly bent longitudinal margins 2, which preferably form an external angle of less than 90° with the horizontal plane of the plate. On the inside of each downwardly bent longitudinal flange 2, the plate 1 is provided with a longitudinally extending groove 3 adjacent the overhang, that is to say, a short distance beneath the underside of the window sill board. * *

The window sill board rests with its underside on fixed wall brackets which are mounted on the wall beneath a window. The drawings show one such bracket 4 which consists of a plate member which has a bent-over flange 5 so that it can be secured to the wall and perpendicular thereto another bent horizontal flange 6, which supports the window sill board. On the underside of the last mentioned flange 6, there are arranged two clamping plates 7 of sheet metal, each of which is provided with a single traverse slot 8, and which can be clamped to the bracket with clamping screws 9, which pass through the slots together with attaching washers 10. The clamping plates which are transversely slidable in relation to the window sill board, extend at one end edge outside of the corresponding end of flange 6, and can extend into the corresponding aligned groove 3 in plate 1. At the other end on each clamping plate there is preferably provided a downwardly bent lug 11 which serves as a handle.

Fig. 1

The examiner rejected claim 5 as being unpatentable over Barecki in view of Olsen, pointing out that Barecki discloses the use of the space in a box seat for controls and equipment, with the box-like member supporting a top panel removable to expose the equipment therein. He concluded that in view of the teaching of Olsen it would be obvious that "such a box-like member could be used with the wall supported bench member of Olsen or could be supported from a wall by the brackets of Olsen."

In affirming, the board preferred to rely upon Olsen as the primary reference. It considered claim 5 to differ from Olsen "only by its requirement of a box structure located below the seat" and that it would not be unobvious to make hollow that portion of Olsen's seat which engages the brackets. The board considered the change obvious in light of the fact that "it is common to make seats hollow for various purposes including storage, as shown by Barecki."

With respect to the Olsen reference, appellant makes the following argument:

There is no provision in this patent for a box-like enclosure below the top of the seat and there is no provision for a top panel with respect to the wall of a box structure. There is no suggestion in the patent for electrical wiring or electrical outlets or for the use of any part of the structure as a wiring conduit. The only part of the Olsen structure that is relevant to applicant's structure is the use of supporting brackets which elevate the top of the seat above the floor, and brackets *per se* are of course, known for supporting many things. It is noted however that the brackets do not support a box-structure between them and the top of the seat as is specifically required by applicant's appealed claim.

In essence, appellant is contending that Olsen does not suggest a box-like structure such as is recited in the appealed claims. While we agree with this contention, we think the Barecki reference is illustrative of the concept of using a box-like structure as a compartment for operating equipment and controls and we are not persuaded that the board committed reversible error in combining the teachings of Barecki with Olsen in finding the claimed subject matter obvious under 35 U.S.C. § 103. Accordingly, we affirm the board's decision.

Affirmed.

RICH, Judge, with whom SMITH, Judge, joins (concurring).

The record seems to be in some confusion as to what Olsen shows, appellant having referred to it as a "seat" and the board having compounded the error. There is no mention in Olsen of a "seat." He discloses a "window sill board," whatever that may be. I would assume it serves as a shelf on which to put things, as appellant's "window bench" serves to support electric typewriters and other office equipment having electric cords which one desires to conceal to make a tidy office.

I would agree with the board that the Olsen patent is the principal reference and I would consider it the only *reference* needed to support an obviousness rejection. Appellant's invention differs from Olsen in providing a box structure underneath the window sill board to contain wires and in having a box of such dimensions that the shelf overhangs its front wall. Such structure, it seems to me, would be obvious to any carpenter or cabinetmaker and well within the ordinary skill of such a person in view of the common American school desks of various kinds at which we all sat as children, which had box-like tops in which books could be stored and no end of other things concealed. It seems to me the invention claimed is no more than an obvious solution to a simple stowage problem made to look more involved than it is by the complexity of American claim practice. Described as a shelf with a box under it, secured to a wall under a window on common brackets, which is all it is, unpatentability becomes much clearer.